IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CIV-04- 0017-F

| | | |
|---|---|---|
| 1. MICHAEL L. CALLOWAY, SR. AND | § | |
| 2. LILLIE E. CALLOWAY, | § | |
| PLAINTIFFS, | § | |
| -vs.- | § | CASE NO. |
| | § | |
| 1. BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, COUNTY COMMISSIONERS AT THE TIME OF THE EVENTS GIVING RISE TO THIS ACTION: | § | |
| 2. BEVERLY HODGES, COUNTY COMMISSIONER, DISTRICT NO. 1 HIGHWAY DEPARTMENT, in her official capacity and individually; | § | |
| 3. JACK W. CORNETT, COUNTY COMMISSIONER, DISTRICT NO. 2 HIGHWAY DEPARTMENT, in his official capacity and individually; | § | FILED JAN - 7 2004 ROBERT D. DENNIS, CLERK U.S. DIST. COURT, WESTERN DIST OF OKLA. BY_____ DEPUTY |
| 4. STUART EARNEST, SR., COUNTY COMMISSIONER, DISTRICT NO. 3 HIGHWAY DEPARTMENT, in his official capacity and individually; COUNTY COMMISSIONERS AT THE TIME OF FILING OF THIS ACTION: | § | |
| 5. JIM ROTH, COUNTY COMMISSIONER, DISTRICT NO. 1 HIGHWAY DEPARTMENT, in his official capacity; | § | |
| ~~6. JACK W. CORNETT, COUNTY COMMISSIONER, DISTRICT NO. 2 HIGHWAY DEPARTMENT, in his official capacity and individually;~~ | § | |
| 6. STAN INMAN, COUNTY COMMISSIONER, DISTRICT NO. 3 HIGHWAY DEPARTMENT, in his official capacity; | § | |
| 7. GERALD L. WRIGHT, SUPERINTENDENT, in his official capacity and individually; and DEFENDANTS. | § | §ATTORNEY'S LIEN CLAIMED §JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs MICHAEL L. CALLOWAY, SR. and LILLIE E. CALLOWAY, by and through their attorney Rebecca K. Schneider, bring this action against the Defendants and allege as follows:

Complaint -January 2004
Page 1

1. This civil action is brought against Defendants for violations of:

    a. 42 U.S.C. § 3601 et seq. (2003), the Fair Housing Act;

    b. 42 U.S.C. § 1983, the Civil Rights Act of 1871;

    c. 42 U.S.C. §§ 1981- 1982;

    d. 42 U.S.C. §1981a; and,

    e. the Fifth and Fourteenth Amendments of the United States Constitution.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.

3. The Court also has jurisdiction pursuant to 42 U.S.C. § 3613 and 42 U.S.C. § 1981.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. Plaintiffs seek to redress the deprivation of Plaintiffs' civil rights by the Defendants.

6. Plaintiffs are individual citizens of the United States and residents of Deer Creek/ Edmond, Oklahoma County, Oklahoma.

7. Defendant GERALD L. WRIGHT is a managerial employee of the Defendant Oklahoma County.

8. Defendant Board of County Commissioners of Oklahoma County is a governmental entity organized for public purposes under the laws of the State of Oklahoma with power to sue and be sued.

9. At the time of the events giving rise to this action, Defendant Board of County Commissioners of Oklahoma County was comprised of:

    a. BEVERLY HODGES, COUNTY COMMISSIONER, DISTRICT NO. 1 HIGHWAY DEPARTMENT;

b.     JACK W. CORNETT, COUNTY COMMISSIONER, DISTRICT NO. 2 HIGHWAY DEPARTMENT; and,

c.     STUART EARNEST, SR., COUNTY COMMISSIONER, DISTRICT NO. 3 HIGHWAY DEPARTMENT.

d.     Said Commissioners are each sued in both their official and individual capacities.

10. Commencing in January 2003, the Defendant Board of County Commissioners of Oklahoma County is comprised of:

a.     JIM ROTH, COUNTY COMMISSIONER, DISTRICT NO. 1 HIGHWAY DEPARTMENT, in his official capacity.

b.     JACK W. CORNETT, COUNTY COMMISSIONER, DISTRICT NO. 2 HIGHWAY DEPARTMENT, in his official capacity and individually;

c.     STAN INMAN, COUNTY COMMISSIONER, DISTRICT NO. 3 HIGHWAY DEPARTMENT, in his official capacity.

11. Plaintiffs' real property is located in the area of Oklahoma County within the scope of DISTRICT NO. 3 HIGHWAY DEPARTMENT.

12. Defendant GERALD L. WRIGHT held and continues to hold the position of Superintendent for Oklahoma County. Defendant Wright was assigned to render services in the geographic district of Oklahoma County wherein Plaintiffs' real property and residence is located. Defendant Wright is sued in his official and individual capacities.

13. In 2000, Plaintiffs purchased real property for construction of a new home.

a.     The legal description for said property is: Lot Five (5), Block One (1) in Sportsman's

       Lake Estates I, a part of the South Half (S/2) of Section Nineteen (19), Township Fourteen (14) North, Range Four (4) West of the Indian Meridian Oklahoma County Oklahoma.

    b.    Plaintiffs with their Children were the first (and presently the only) African-American Family to purchase a lot and to build a residence in Sportsman's Lake Estates I.

    c.    Plaintiffs entered into a construction contract with Mark Gray of Mark Gray Construction Company to build a residence on Plaintiffs' lot.

    d.    In March 2000, construction of a home at 19445 Sportsman's Road, Edmond, Oklahoma was commenced.

    e.    Restrictive Covenants and Restrictions were initially promulgated by the developer Pat A. Patterson. Plaintiffs are required to maintain their property in compliance with the Restrictive Covenants, Rules and Regulations promulgated for Sportsman's Lake Estates I. At all times material hereto, Mr. Patterson and then the Association monitor Plaintiffs compliance with said Restrictive Covenants.

    f.    During the relevant time periods giving rise to this Complaint, Defendants' actions significantly impaired Plaintiffs' compliance with various covenants and restrictions applicable to their property and new residence.

    g.    At the time of closing on May 3, 2001, the appraised value of Plaintiffs' residence was $460,000.00.

14.    Pursuant to contract, Plaintiffs' contractor Mark Gray of Mark Gray Construction Company broke ground and began the construction of Plaintiffs' home.

a. Shortly after Mr. Gray broke ground in May 2000 for Plaintiffs' home, the Defendant County, by and through Gerald L. Wright and his employees, trespassed onto Plaintiffs' lot, took (unlawfully) possession of a large quantity of soil located on Plaintiffs' lot and (unlawfully) hauled the soil away from Plaintiffs' lot. Defendants' removed approximately *twenty or more* truck loads of soil from Plaintiffs' lot. (emphasis added).

   i. A photograph of Plaintiffs' lot after the removal of the soil is attached Plaintiffs' Exhibit 1.

b. On or around August 2000, without Plaintiffs' consent, Defendants again (unlawfully) trespassed onto Plaintiffs' land and removed approximately ten truck loads of soil.

c. In 2001, Plaintiffs contacted Defendants and requested that Defendants replace the top spoil and dirt previously removed by Defendants from Plaintiffs' lot. Defendant Wright informed Plaintiffs and their builder that Defendants would replace the top soil and dirt previously removed from Plaintiffs lot provided that Plaintiffs purchase tin horns.[1] Subsequently, Defendants returned to Plaintiffs' property, replaced only part of the spoil and caused further damage to Plaintiffs' lot and property. Photographs reflecting the harm caused by this action are attached hereto as Plaintiffs' Exhibit 2.[2]

---

[1] Defendants (and Defendant Wright) required Plaintiffs to purchase 24-inch tin horns through the Defendants although 12-inch tin horns were adequate to reclaim the land.

[2] In November 2001, the Defendants purported to repair the damage that they caused to Plaintiffs' property. Defendant Wright and his crew came to Plaintiffs lot with equipment and soil. However, prior to performing any repair to the land, Defendant Wright told his subordinate employees to "saddle up" and departed from Plaintiffs' land. The enormous ditch in Plaintiffs yard continued unabated.

    d.    In the summer of 2002, Defendants dug up Plaintiffs' lot and caused further harm to Plaintiffs lot. A photograph reflecting the damages is attached hereto as Plaintiffs' Exhibit 3.

    e.    Defendants unlawful removal of the soil created drainage and erosion problems on Plaintiffs land.

15. Defendants actions set forth in paragraph 16 commenced in May 2000 and continued through February 2002 to cause harm and injury to Plaintiffs' property.

16. Defendants' continuous actions as described herein created a huge arroyo traversing the entire front yard of Plaintiffs' lot.

17. Defendants actions damaged Plaintiffs' property. The damage includes, but is not limited to:

    a.    Altering Plaintiffs' (original and subsequent) plans for the construction of drive ways and walkways for ingress and egress onto the property;

    b.    Altering the natural flow of water on the property that existed at the time Plaintiffs purchased their lot thereby causing water to run into and accumulate in the ditch created by Defendants.

    c.    Causing water to accumulate and to stagnate requiring Plaintiffs to hire land pump trucks to drain the stagnant water from the gully.

    d.    Impairing ingress and egress.

    e.    Adversely impacted the maintenance of Plaintiffs' lot.

18. Defendants severed electric lines for outdoor lightening eliminating Plaintiffs' driveway, and further harmed Plaintiffs' property. Defendants failed to repair this damage. Plaintiffs seek an order of the Court for the repair of the electrical lines severed by Defendants. Said repair may

requires the digging up of Plaintiffs' concrete driveway.

19. Plaintiffs attempts to correct the harm caused by Defendants were thwarted by Defendant Wright and on information and belief by Defendant Earnest.[3] Defendant Wright told Plaintiffs that Defendants would not repair the harm and further told Plaintiffs that they:

   a. Could not install a sprinkler system on their lot.

   b. Could not bring in soil or dirt.

   c. Could not sod the lawn.[4]

   Defendant Wright told Plaintiffs that they needed his approval to do these tasks and that he would never approve the tasks. Defendant Wright told Plaintiff Mr. Calloway that if he didn't like it they could sue him.[5]

20. Defendants (and Defendant Wright) discriminated against Plaintiffs because of their race.

21. Plaintiff Mr. Calloway was told by Defendants: "You don't have any business out here."

22. On numerous occasions, Plaintiffs requested that the Defendants repair the damage that the Defendants caused. Defendants denied Plaintiffs' requests.

---

[3] Plaintiffs sought to obtain the services of K & P Backhoe Excavating Company to level the yard at an estimated cost of $40,000.

[4] Plaintiffs' yard began to erode as a consequence of the drainage ditch created by and enlarged by Defendants and the Defendants actions and inactions. Plaintiffs were further harmed because they were unable to install an irrigation system, unable to landscape the front yard with grass seed and plants. The erosion of Plaintiffs' land necessitated a purchase of over 50,000 square feet of sod (as opposed to grass seed).

[5] Defendant Wright informed Plaintiffs that in the event that Plaintiffs' reclaimed the land or hired someone to reclaim their land, then the Defendants would just come back onto Plaintiffs' property and tear it back up.

23. On numerous occasions, Plaintiffs telephoned Defendants regarding these matters and the telephone calls were not responded to by Defendants. Defendant Wright refused to speak to Plaintiffs to address these matters.

24. Defendant Wright threatened Plaintiffs with further injury and harm. Defendant Wright directed (subordinate) employees not to speak to Plaintiffs regarding the matters complained of herein and threatened (subordinate) employees with termination for violation of the directive.

25. Plaintiffs' neighboring landowners were not subjected to similar treatment by Defendants.

26. Defendants failed either to repair or compensate Plaintiffs for the harm arising from their actions and inactions.

27. Plaintiffs repaired the damage to their land caused by Defendants at an approximate cost of $70,000.

## CLAIMS FOR RELIEF

28. Section 3604(b) of Title 42, provides, in pertinent part, that is shall be unlawful: "To discriminate against any person *in the terms, conditions, or privileges of sale* or rental of a dwelling, *or in the provision of services or facilities in connection therewith, because of race, color,* religion, sex, *familial status, or national origin*. 42 U.S.C. § 3604 (2003)(emphasis added).

29. Section 3604 also provides, that it shall be unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin. ...
(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference,

limitation, or discrimination.

(d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

(e) For profit, *to induce or attempt to induce any person to sell* or rent any dwelling *by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color,* religion, sex, handicap, *familial status,* or national origin. (emphasis added).

30. Section 3617 of Title 42 ( Interference, coercion, or intimidation), provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, *any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.* 42 U.S.C. § 3617 (2003)(emphasis added).

31. Section 3613 c, provides:

**(1)** In a civil action under subsection (a) of this section, *if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages*, and subject to subsection (d) of this section, *may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).* 42 U.S.C. § 3613(c)(2003)(emphasis added).

32. Plaintiffs should be granted injunctive relief against Defendants. Defendants should be restrained from taking any further action against Plaintiffs.

33. Plaintiffs are entitled to recover compensatory damages, damages for emotional distress, humiliation and mental anguish suffered by Plaintiffs and punitive damages arising from Defendants continuous violations of the Fair Housing Act.

34. Defendants actions and in actions were taken with willful, wanton and malicious disregard for the rights of Plaintiffs.

35. Plaintiffs are entitled to recover a reasonable attorney's fee and costs from Defendants

necessitated by this action. 42 U.S.C. § 3613C.

36. Under §1981 of Title 42, every person, regardless of race or citizenship, freedom from discrimination based on race in the making and forcing of contracts.

37. Defendants unlawfully discriminated against Plaintiffs in connection with their residential real estate transaction and construction contract because of Plaintiffs' race.

38. Section 1981 of Title 42 provides as follows:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same rights in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> (b) Definition
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

39. Plaintiffs are members of of a racial minority.

40. Plaintiffs purchased the property described herein.

41. Plaintiffs were ready, willing, and able perform contracts pertaining to the development of their real estate.

42. Defendants discriminated against Plaintiffs in Defendants' performance of their duties. Defendants refused to perform their duties relating to Plaintiffs' real property.

43. Defendants discouraged Plaintiffs or otherwise made the property unavailable to Plaintiffs and their representatives.

44. The race of the Plaintiffs was a motivating factor in Defendants' decisions.

45. Defendants were motivated by a racially discriminatory purpose. Defendants intentionally and purposefully discriminated against Plaintiffs and their family because of race.

46. Direct evidence of discrimination in violation of the federal statutes exists to support Plaintiffs claims.

47. Any alleged justification by Defendants for the conduct complained by Plaintiffs is a pretext for discrimination. Defendants' reason is merely a cover-up for discrimination. Defendants' purported reason(s) are inconsistent with Defendants' own policies and rules. Defendants did not apply their policies and rules uniformly.

48. Defendant Countyis liable to Plaintiffs for the discrimination alleged by Plaintiffs.

49. Defendant County is liable for the unlawful actions done pursuant to a governmental custom, policy, ordinance, regulation or decision.

50. Plaintiffs were injured as the proximate, direct result of Defendant government's policy, custom, regulation or decision made by Defendant County's lawmakers or by those officials whose statements or acts may fairly be said to represent official policy, Defendant County itself is responsible for the injury that it caused.

51. Defendant County is liable to Plaintiffs because the discrimination was done pursuant to a custom, policy, ordinance, regulation, or decision of Defendant County that was the proximate, direct cause of the discrimination.

52. The members of the Board of County Commissioners are officials whose acts constitute final official policy of Defendant County. Defendant County is liable for such deprivations.]

Complaint -January 2004
Page 11

53. The class being discriminated on the basis of race, constitutes a discrete "race" as that term is commonly understood today.

54. Plaintiffs' injuries and damages were proximately caused by acts and/or failures to act of the Defendants. Defendants acts and/or failures to act played a substantial part in bringing about or actually causing the injuries and damages suffered by Plaintiffs, and the injuries or damages were either a direct result or a reasonably probable consequence of the acts or omissions.

55. Plaintiffs are entitled to recover actual or compensatory damages caused by the acts of Defendants regarding the property in question. Plaintiffs are entitled to recover any costs and expenses sustained by Plaintiffs as a result of Defendants' conduct. Such damages may include all of the out-of-pocket costs incurred by Plaintiffs, diminution in the value of such property, and any other damages Plaintiffs prove were a result of the discrimination.

56. The acts of Defendants in violation of § 1981 were done with malice or reckless indifference to the Plaintiffs' federally protected rights so as to entitle the Plaintiffs to an award of punitive damages in addition to compensatory damages.

57. Defendants are liable for punitive damages. Defendant County's a higher management officials personally acted with malice or reckless indifference to Plaintiffs' federally protected rights, and Defendant County did not act in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination.

58. Defendants actions violated 42 U.S.C. Section 1981. Plaintiffs took action to lessen the harm caused by Defendants.

59. Section 1982 of Title 42 of the United States Code provides that: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

60. Plaintiffs and their Family are members of a racial minority.

61. Plaintiffs purchased the (undeveloped) land located in Oklahoma County and hired a contractor to build a new home for Plaintiffs.

62. Plaintiffs (with their builder and others) were ready, willing, and able to pay the price of the land and to finance the new construction of their residence.

63. Defendants discouraged the purchase of the undeveloped land and development of said land by Plaintiffs and their representatives, or otherwise made the property unavailable to Plaintiffs and their representatives.

64. The residential development was in progress.

65. No apparent reason other than Plaintiffs' race exists to explain Defendants' actions and failures to act regarding said property.

66. Plaintiffs followed the procedures and fulfilled the requirements generally required of other buyers and developers in the Sportsman's Lake Estates I of Deer Creek, Oklahoma County.

67. Defendants were motivated by a racially discriminatory purpose. Defendants intentionally and purposefully discriminated against Plaintiffs because of race. Any purported justification by Defendants is a pretext for discrimination.

68. Plaintiffs are entitled to recover actual or compensatory damages caused by the acts or omissions of defendants, to include costs or expenses sustained by Plaintiffs as a result of Defendants' conduct. Such damages may include all of the out-of-pocket costs incurred by

Plaintiffs to repair the damages caused by Defendants and any other damages Plaintiffs proves were a direct result of the discrimination.

69. Plaintiffs' claims the acts of defendants were done with malice or reckless indifference to Plaintiffs' federally protected rights so as to entitle the Plaintiffs to an award of punitive damages in addition to compensatory damages.

70. Plaintiffs were injured as a result of conduct by defendants in violation of § 1982. Plaintiffs lessen the harm suffered.

71. Plaintiffs followed the procedures and fulfilled the requirements generally required of other buyers.

72. Plaintiffs were ready, willing, able, and qualified to complete transactions relating to the development of their land.

73. Plaintiffs are not required to show that Defendants intended to discriminate in order to establish Plaintiffs' claim under the Fair Housing Act because Defendants' conduct actually or predictably had a substantial adverse impact on the protected class of which Plaintiffs are members.

74. Defendants unlawfully discriminated against Plaintiffs. The acts of Defendants were "maliciously" or "wantonly" or "oppressively" done and Plaintiffs are entitled to recover punitive damages in addition to actual damages. [6]

---

[6] An act or failure to act is "maliciously" done if prompted or accompanied by ill will, or spite, or a grudge either toward the injured persons individually or toward all persons in one or more groups or categories of which the injured person is a member. An act or failure to act is "wantonly" done if done in reckless or callous disregard of or indifference to the rights of one or more persons including the injured person. An act or failure to act is "oppressively" done if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary

75. Plaintiffs mitigated the damages caused by Defendants' violations of the Fair Housing Act and the federal statutes cited to herein.

76. 42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

77. Defendants acts were done under color of State Law.

78. Defendants acts were preformed by officials within the bounds or limits of their lawful authority and also when such officers act without and beyond the bounds of their lawful authority.

79. Defendants acts were done under color of any state law, or county or municipal ordinance, or any regulation issued thereunder, or any state or local custom. [7]

80. Defendants' unlawful acts were done while the official is purporting or pretending to act in the performance of the official's official duties. The unlawful acts consist of an abuse or misuse of power possessed by the officials only because the persons are officials.

---

harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability of the misfortunes of another person.

[7] OK Const. Art. 2, § 24 (Private party shall not be taken or damaged for public use without just compensation). OK Const. Art. 2, § 23 (Private party shall not be taken or damaged for private use with or without compensation).

81. The unlawful acts are of such a nature, and be committed under such circumstances, that they would not have occurred but for the fact that the person(s) committing them were officials, purporting to exercise official powers.

82. The federal statute(s) that Defendants violated covers not only acts done by an official under color of any state law, but also acts done by an official under color of any ordinance or regulation of any county or municipality of the state, as well as acts done by an official under color of any regulation issued by any state, or county, or municipal official, and even acts done by an official under color of some state or local custom.

83. The actions complained of herein constitute an unconstitutional taking of property in violation of the fifth and fourteenth amendments of the U.S. Constitution. [8]

WHEREFORE Plaintiffs are entitled to the following relief from the Defendants in accordance with the federal statutes and authorities set forth herein, including:

    a. Compensatory damages;

    b. A Court Order directing Defendants to the repair of the electrical lines to Plaintiffs residential property that were severed by Defendants;

    c. Exemplary damages;

    d. Reasonable attorney's fees, costs and expenses;

    e. Interest; and

    f. In the event that (further) adverse action is taken against Plaintiffs or their property as a consequence of this lawsuit, then the Court should issue an order granting Plaintiffs

---

[8] *Dolan v. City of Tigard,* 114 S.Ct. 2309, 2316-2317 (1994).

injunctive relief.

*[Signature]*
REBECCA K. SCHNEIDER, OBA #10602
4901 Richmond Square, Suite 100
Oklahoma City, OK 73118
Telephone: (405) 843-7000
Facsimile: 405-843-7033
**Attorney for the Plaintiff**

## VERIFICATION

STATE OF OKLAHOMA )
             )
COUNTY OF OKLAHOMA )

MICHAEL L. CALLOWAY, SR., of lawful age, being first duly sworn, upon oath states that he has read the Complaint and the facts therein contained are true and correct to the best of his knowledge and belief.

_____
Michael L. Calloway, Sr.

Subscribed and sworn to before me this 5th day of January, 2004.

_____

My Commission Expires:

May 7, 2005

[Notary No. 01007618 ]